UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

JOHN BISANTI,
                    Defendant

~~CRIMINAL No. 02-30028-~~MAP

*CA 04-30145-MAP*

## DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

### INTRODUCTION

On September 4, 2003, the Defendant, John Bisanti, was convicted by a jury in Defendant evaded the payment of his taxes. On February 4, 2004, Judge Ponsor sentenced the Defendant to a term of imprisonment of 41 months based upon an offense level of 22 under the United States Sentencing Guidelines. On June 24, 2004, the United States Supreme Court decided the case of Blakely v. Washington which recognized that the maximum sentence a judge may impose was limited to the facts reflected in the jury verdict or admitted by the Defendant. The Defendant now moves this honorable court to vacate the sentence he received on February 4, 2004, and re-sentence him pursuant to the holding of Blakely.

### ARGUMENT

In this case, the Defendant exercised his right to a jury trial, and was convicted of one count of tax evasion. The verdict form reads: "WE, THE JURY, FIND the Defendant GUILTY of evading payment of his taxes for the years 1994 through 1998." See Exhibit "A" attached hereto. The jury did not find the amount of taxes that were evaded, nor did it find the means by which the Defendant evaded the payment of his taxes. At no time during the trial, or thereafter, did the Defendant admit the amount of taxes evaded.

At his sentencing hearing, the trial judge found the amount evaded was in excess of $400,000.00, but less than $1,000,000.00 and thus applied a base offense level of 20. See U.S. Sentencing Commission Guidelines Manual § 2T4.1. The judge then made an additional finding that the Defendant used sophisticated means in evading the taxes and increased the offense level to 22 accordingly. See Statement of Reasons attached hereto as Exhibit "B".

In Blakely v. Washington, the Supreme Court held that the maximum sentence a judge may impose must be based solely on the facts reflected in the jury verdict or admitted by the defendant. Justice Scalia reasoned that "[w]hen a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment' and the judge exceeds his proper authority." Blakely citing 1 J. Bishop, Criminal Procedure § 87 p. 55 (2d ed. 1872).

Although the First Circuit has not yet rendered an opinion under Blakely, other circuits have issued decisions relevant to the analysis. In United States v. Booker, 03-4225 (7th Cir. 2004), the Seventh Circuit held that "[t]he finding of facts (other than the fact of the defendant's criminal history) bearing on the length of the sentence is just what the Supreme Court in Blakely has determined to be the province of the jury." The Sixth Circuit held that "[I]n light of Blakely ... a district judge should no longer view [him]self as operating a mandatory or determinate sentencing system, but rather should view the guidelines in general as recommendations to be considered and then applied only if the judge believes they are appropriate and in the interests of justice in the particular case." United States v. Montgomery, 03-5256 (6th Cir. 2004).

This is not to say that the guidelines themselves are unconstitutional. Indeed, the majority in Blakely noted that it was not a case about "whether determinate sentencing is constitutional, only about how it can be implemented in a way that respects the Sixth Amendment." The Ninth Circuit recently decided a case very similar to the case at hand. In United States v. Ameline, 02-30326 (9th Cir. 2004) the defendant pled guilty to knowingly conspiring to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 846. The plea agreement did not contain an agreement as to a specific quantity of methamphetamine for purposes of sentencing, and the defendant only admitted that 'some methamphetamine' was involved in his offense conduct. The

district court judge found that Ameline was responsible for 1,603.60 grams of methamphetamine and sentenced him accordingly.  The Ninth Circuit's holding is worth noting at length:

> We have held that <u>Blakely</u> applies to the procedure the district court followed to determine Ameline's base offense level under § 2D1.1(c) and the two level upward enhancement pursuant to §2D1.1(b)(1).  We do not invalidate either the base offense levels in § 2D1.1(c) or the two level enhancement in § 2D1.1(b)(1).  Rather, we hold that in determining a base offense level under § 2D1.1(c) or an upward enhancement under § 2D1.1(b)(1), in order to be consistent with <u>Blakely</u>, those determinations must be made by a jury beyond a reasonable doubt (or by a judge with proper jury waiver).

<u>United States v. Ameline</u>.

In the case at hand, the district court judge relied on the presentence report to determine the amount of tax loss of between four hundred thousand dollars and one million dollars.  See Exhibit "C" p. 33.  This finding resulted in a base offense level of 20.  The judge then made an additional finding that the defendant used sophisticated means and added two more levels for a total offense level of 22.   As in the case of <u>Ameline</u>, those facts should have been decided by a jury beyond a reasonable doubt.  Absent that, the sentencing guidelines would provide for an offense level of 6 which would result in a term of imprisonment of zero to six months. See Exhibits "D" and "E" attached hereto.  As of the date of this memorandum, the Defendant has been incarcerated in excess of seven months – a sentence that exceeds the maximum permissible based upon the facts found by the jury.

Although not controlling, Judge Singal, the Chief United States District Judge for the District of Maine recently cited both <u>Ameline</u> and <u>Booker</u> approvingly when he held that the <u>Blakely</u> reasoning applies to the United States Sentencing Guidelines. <u>United States v. Zompa</u>, Criminal No.: 04-46-P-S-01.  In <u>Zompa</u>, Chief Judge Singal held that any enhancement of the defendant's base offense level based on his finding as to a particular drug quantity would violate the defendant's right to be sentenced based upon only those facts that he admitted or that the Government proved beyond a reasonable doubt.  The same reasoning must apply to a finding of any particular amount of tax evaded in the case at hand.

The Government will likely argue that Mr. Bisanti did not object to that portion of the presentence report that indicated the amount of tax owed and evaded, and therefore it must be deemed admitted by the Defendant.  Chief Judge Singal addressed that perceived obstacle as well.  Specifically, Chief Judge Singal held:

> Based on the presentence report and the fact that Defendant did not object to the contents of that report, the Court has stated on the record that it finds by a preponderance of the evidence that Mr. Zompa could be held accountable for distribution of 15.3 grams of cocaine base. However, as explained above and at the sentencing hearing, the Court ultimately concludes that this factual finding cannot affect the sentence imposed upon Mr. Zompa in light of Blakely v. Washington.

Likewise, even though Mr. Bisanti did not object to those portions of the presentence report, and even though this Court made a finding by a preponderence of the evidence that the payment of a certain amount of tax had been evaded, that finding cannot affect the sentence imposed upon Mr. Bisanti.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Defendant respectfully requests that this honorable court vacate his sentence, and re-sentence him consistent with the facts found by the jury, and the ruling in Blakely v. Washington.

Respectfully Submitted
For the Defendant
John Bisanti

Dated: August 5, 2004

_____
Raipher D. Pellegrino
BBO# 560614
Raipher D. Pellegrino Associates, P.C.
95 State Street, Suite 1100
Springfield, MA  01103
Tel. No.  (413) 746-4400
Fax No.  (413) 746-2816

## CERTIFICATE OF SERVICE

I, Raipher D. Pellegrino, Attorney for the Defendant, hereby certify that I have this _____ day of August, 2004, caused a copy of the foregoing document to be served upon the parties to this action via first class mail to:   Ariane D. Vuono, Assistant U. S. Attorney, U.S. Department of Justice, Federal Building & Courthouse, 1550 Main Street, Room 310, Springfield, MA  01103

Raipher D. Pellegrino

# EXHIBIT "A"

### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

              **v.**                        **CASE NO.** 02-30028

JOHN BISANTI

### VERDICT FORM

WE, THE JURY, FIND:   the defendant   (GUILTY)   ~~NOT GUILTY~~   of evading payment

of his taxes for the years 1994 through 1998

9/4/03
_____
DATE

(VERDICT.WPD - 10/96)

_____
FOREPERSON'S SIGNATURE

[jyv.]
[kjyv.]

# EXHIBIT "B"

AO 245B   Judgment in a Criminal Case - D. Massachusetts
Statement of Reasons - Sheet 1

# UNITED STATES DISTRICT COURT
### District of Massachusetts

UNITED STATES OF AMERICA
### V.

JOHN BISANTI

**STATEMENT OF REASONS**

Case Number:   **3: 02 CR 30028-001**

RAIPHER PELLEGRINO, ESQ
Defendant's Attorney

[X]   The court adopts the factual findings and guideline application in the presentence report.

### OR

[ ]   The court adopts the factual findings and guideline application in the presentence report, except (see attachment, if necessary):

[ ] See Continuation Page

**Guideline Range Determined by the Court:**

| | | |
|---|---|---|
| Total Offense Level: | 22 | |
| Criminal History Category: | 1 | |
| Imprisonment Range: | 41 | to 51   months |
| Supervised Release Range: | 2 | to 3   years |
| Fine Range: | $ 7,500.00 | to $ 75,000.00 |

Defendant's Soc. Sec. No.:   000/00/6258

Defendant's Date of Birth:   00/00/64

Defendant's USM No.:   55559-004

Defendant's Residence Address:

30 Adams Street
Springfield, MA  01105

02/04/04

Date of Imposition of Judgment

*Michael A. Ponsor* (signature)
Signature of Judicial Officer

MICHAEL A. PONSOR

Judge, U.S. District Court
Name and Title of Judicial Officer

2/18/04
Date

Defendant's Mailing Address:

Same as above

AO 245B    Judgment in a Criminal Case - D. Massachusetts
           Statement of Reasons - Sheet 3

DEFENDANT:    JOHN BISANTI                          Statement of Reasons - Page    3    of
CASE NUMBER:   3:  02      30028       01

## STATEMENT OF REASONS

[X]  The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no reason to depart from the
     sentence called for by the application of the guidelines.

### OR

[ ]  The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for the following reasons:

### OR

[ ]  The sentence departs from the guideline range:

     [ ]  upon motion of the government, as a result of a defendant's substantial assistance, or

     [ ]  for the following specific reason(s):

                                                          [ ]  See Continuation Page

AO 245B  Judgment in a Criminal Case - D. Massachusetts (10/01)
Sheet 5, Part B — Criminal Monetary Penalties

CASE NUMBER: 3  02  30028  001                                      Judgment - Page    of
DEFENDANT:

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

A  ☐  Lump sum payment of _____ due immediately, balance due

☐ not later than _____ , or
☐ in accordance with ☐ C, ☐ D, or ☐ E below; or

B  ☐  Payment to begin immediately (may be combined with C, D, or E below); or

C  ☐  Payment in _____ (e.g., equal, weekly, monthly, quarterly) installments of _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D  ☐  Payment in _____ (e.g., equal, weekly, monthly, quarterly) installments of _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E  ☒  Special instructions regarding the payment of criminal monetary penalties:

Assessment Fee due immediately

Unless the court has expressly ordered otherwise in the special instruction above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court, unless otherwise directed by the court, the probation officer, or the United States attorney.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

Case Number, Defendant Name, and Joint and Several Amount:

☐ The defendant shall pay the cost of prosecution.                    ☐ See Continuation
                                                                          Page

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) community restitution, (6) fine interest (7) penalties, and (8) costs, including cost of prosecution and court costs.

EXHIBIT " C "    *client 6/30/04*

1

<pre>
 1              UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF MASSACHUSETTS
 2                    WESTERN SECTION

 3

 4                          Docket No. 02-30028-MAP

 5

 6   UNITED STATES

 7   VS.

 8   JOHN BISANTI

 9

10

11

12

13

14      HEARING HELD IN THE UNITED STATES DISTRICT COURT
     1550 Main Street, Springfield, Massachusetts, before
15   the Honorable Michael A. Ponsor, on February 4, 2004

16

17

18

19   APPEARANCES:
     (See Page 2)
20

21

22

23

24

25              Sarah L. Mubarek
           Registered Professional Reporter
</pre>

959 MAIN STREET
4TH FLOOR
SPRINGFIELD, MA 01103

PHILBIN & ASSOCIATES, INC.

(413) 733-4078
Pittsfield: (413) 499-2231
FAX: (413) 734-1588

Serving the legal community of Massachusetts since 1947

depart, that is impose a sentence which is lower than what the sentencing guideline range would otherwise call for.

This is where I want to step back and just take a minute or two and explain to those of you who are in the courtroom how sentencing works, and the rules that guide what a judge is to do under these circumstances. For a number of years now, certainly for longer than I've been a District Court Judge, we have in Federal Court what are called sentencing guidelines. Sentencing guidelines are rules which judges are required to follow when imposing a sentence on any defendant in Federal Court, whether it follows a trial or whether it follows a plea of guilty.

The rules work essentially via a grid. The grid has two axes. Down the left-hand side of the grid is what's called the offense level, and that measures the severity of the offense. Relatively minor offenses may have an offense level of only two or three, or even nine or ten or eleven. Those are relatively small or low offense levels, relatively minor charges. The higher end of the offense levels involves the more serious charges and then go up to the high thirties or low forties, but the highest

959 MAIN STREET
4TH FLOOR
SPRINGFIELD, MA 01103

PHILBIN & ASSOCIATES, INC.

(413) 733-4078
Pittsfield: (413) 499-2231
FAX: (413) 734-4588

7

1  offense level is forty-three.

2      So the sentencing guidelines manual directs you

3  to the particular offense, and then it gives you

4  something like the quantity of drugs involved, or in

5  this case the amount of taxes evaded, and you use

6  that to calculate the offense level, and that tells

7  you where you are on the left-hand axis.

8      Over the top of the axis you have the

9  defendant's criminal history category, which is what

10  the defendant's record is.  As the defendant's record

11  gets more severe you have a higher criminal history

12  category.  So for someone who has a relatively low

13  prior record, you start out at the criminal history

14  category I.  That's the very lowest.  Somebody who

15  has a high criminal history category has a criminal

16  history category VI.  That's the farthest over on the

17  right-hand side.

18      Then you take the offense level and the criminal

19  history category and you bring them together, and

20  there's a chart right here that tells you what the

21  sentencing guideline range is for that particular

22  crime.  Once you've established what the sentencing

23  guideline range is, you may consider bases for

24  downward departure.  That is unusual sorts of

25  circumstances, circumstances that make a particular

8

1   crime, as they say, take it out of the heartland so

2   it isn't a usual crime.  There's something unusual or

3   exceptional about the case.

4       Under those circumstances, if the exceptions

5   make the situations worse, you can even go above the

6   sentencing guideline range.  I do that very rarely,

7   and in fact nationally, across the country, it

8   doesn't happen all that often that people exceed the

9   guideline range, though it does sometimes.  You can

10  also go below the guideline range in specific sorts

11  of circumstances, and as you might imagine, there's a

12  great deal of law that the Appeals Courts have tried

13  to tell us trial judges when it's appropriate to go

14  downward from the guideline range and when it's not

15  appropriate.

16      So that's where we are today.  We have the

17  presentence report, and as I understand it, there is

18  no objection to the presentence report from the

19  government, is that correct?

20          MS. VUONO:  That's correct, your

21  Honor.

22          THE COURT:  And there is one

23  exception, one objection to the presentence report

24  that's been filed by the defendant, and that has to

25  do with the calculation of the defendant's offense

959 MAIN STREET
4TH FLOOR
SPRINGFIELD, MA 01103

PHILBIN & ASSOCIATES, INC.

(413) 733-4078
Pittsfield: (413) 499-223.
FAX: (413) 734-4588

33

1    earlier.  The defense takes the position that this

2    was something that he should get sort of at least

3    moral acknowledgment for because in some sense,

4    according to the defense, he permitted it to happen.

5    I don't need to resolve that dispute.  It's not part

6    of any objection to the presentence report.

7         The fact of the matter is that we're dealing

8    with a tax loss of between four hundred thousand

9    dollars and one million dollars, which under the

10   sentencing guidelines and looking at that vertical

11   access starts me out at a level twenty.  We then go

12   an extra two points because there was sophisticated

13   means involved in the willful evasion of the taxes,

14   which brings us up to a level twenty-two.  Again,

15   that is not contested for purposes of this sentencing

16   proceeding.

17        A level twenty-two at a criminal history

18   category I gives me a sentencing guideline range of

19   41 to 51 months.  Well, that is the sentencing

20   guideline range that we are dealing with based upon

21   the presentence report, which aside from the one

22   objection I have ruled on is unobjected to.  That is

23   the sentencing guideline range that we are now at.

24        Congress has said that at this point, unless

25   there is some exceptional circumstance, that a

959 MAIN STREET
4TH FLOOR
SPRINGFIELD, MA 01103

PHILBIN & ASSOCIATES, INC.

(413) 733-4078
Pittsfield: (413) 499-2231
FAX: (413) 734-4588

34

District Court Judge in my position is required to impose a sentence of between 41 and 51 months. Now we move to the next issue, which is the defendant's motion for downward departure on the grounds that this is an exceptional situation, and therefore I should impose a sentence below the floor of the guideline range, that is below the 41 months.

I have read your memorandum, but I'll hear you on that now, Mr. Pellegrino.

MR. PELLEGRINO: Your Honor, would this be the appropriate time to hear from my client?

THE COURT: However you would like to do it, I would be happy to do it. I will say a few things, and then I'd be happy to hear from Mr. Bisanti at any time. If you would prefer to have him speak earlier rather than later, I don't really have any objection to that.

As you know, I'm sure, there are only rather specific situations where a judge is entitled to depart downward. A judge cannot depart downward because he feels bad for a defendant or feels bad for a family, and if I did, I think what I've heard from the defendant's family would certainly touch me. It does touch me. Obviously he's much beloved and respected and many people have felt his kindness.

959 MAIN STREET
4TH FLOOR
SPRINGFIELD, MA 01103

PHILBIN & ASSOCIATES, INC.

(413) 733-4078
Pittsfield: (413) 499-2231
FAX: (413) 734-4588

U.S. Sentencing Commission Guidelines Manual    **EXHIBIT** "D"

▢ U.S. Sentencing Commission Guidelines Manual
▢ CHAPTER TWO — OFFENSE CONDUCT
▢ PART T — OFFENSES INVOLVING TAXATION
▢ 1. INCOME TAXES, EMPLOYMENT TAXES, ESTATE TAXES, GIFT TAXES, AND EXCISE TAXES (OTHER THAN ALCOHOL, TOBACCO, AND CUSTOMS TAXES)

[Previous Document in Book]                                                      [Next Document in Book]

§ 2T1.1. Tax Evasion; Willful Failure to File Return, Supply
         Information, or Pay Tax; Fraudulent or False Returns, Statements,
         or Other Documents

  (a) Base Offense Level:

  (1) Level from § 2T4.1 (Tax Table) corresponding to the tax
loss; or

  (2) 6, if there is no tax loss.

  (b) Specific Offense Characteristics

  (1) If the defendant failed to report or to correctly identify
the source of income exceeding $10,000 in any year from criminal
activity, increase by 2 levels. If the resulting offense level is
less than level 12, increase to level 12.

  (2) If the offense involved sophisticated means, increase by 2 levels.
If the resulting offense level is less than level 12, increase to level
12.

  (c) Special Instructions

  For the purposes of this guideline —

  (1) If the offense involved tax evasion or a fraudulent or false
return, statement, or other document, the tax loss is the total amount of
loss that was the object of the offense (i.e., the loss that would have
resulted had the offense been successfully completed).

  Notes:

  (A) If the offense involved filing a tax return in which gross income
was underreported, the tax loss shall be treated as equal to 28% of the
unreported gross income (34% if the taxpayer is a corporation) plus 100%
of any false credits claimed against tax, unless a more accurate
determination of the tax loss can be made.

  (B) If the offense involved improperly claiming a deduction or an
exemption, the tax loss shall be treated as equal to 28% of the amount of
the improperly claimed deduction or exemption (34% if the taxpayer is a
corporation) plus 100% of any false credits claimed against tax, unless a
more accurate determination of the tax loss can be made.

  (C) If the offense involved improperly claiming a deduction to provide
a basis for tax evasion in the future, the tax loss shall be treated as
equal to 28% of the amount of the improperly claimed deduction (34% if
the taxpayer is a corporation) plus 100% of any false credits claimed

against tax, unless a more accurate determination of the tax loss can be made.

(D) If the offense involved (i) conduct described in subdivision (A), (B), or (C) of these Notes; and (ii) both individual and corporate tax returns, the tax loss is the aggregate tax loss from the offenses added together.

(2) If the offense involved failure to file a tax return, the tax loss is the amount of tax that the taxpayer owed and did not pay.

Notes:

(A) If the offense involved failure to file a tax return, the tax loss shall be treated as equal to 20% of the gross income (25% if the taxpayer is a corporation) less any tax withheld or otherwise paid, unless a more accurate determination of the tax loss can be made.

(B) If the offense involved (i) conduct described in subdivision (A) of these Notes; and (ii) both individual and corporate tax returns, the tax loss is the aggregate tax loss from the offenses added together.

(3) If the offense involved willful failure to pay tax, the tax loss is the amount of tax that the taxpayer owed and did not pay.

(4) If the offense involved improperly claiming a refund to which the claimant was not entitled, the tax loss is the amount of the claimed refund to which the claimant was not entitled.

(5) The tax loss is not reduced by any payment of the tax subsequent to the commission of the offense.

## Commentary

Statutory Provisions: 26 U.S.C. § 7201, 7203 (other than a violation based upon 26 U.S.C. § 6050I), 7206 (other than a violation based upon 26 U.S.C. § 6050I or § 7206(2)), and 7207. For additional statutory provision(s), see Appendix A (Statutory Index).

Application Notes:

1. "Tax loss" is defined in subsection (c). The tax loss does not include interest or penalties, except in willful evasion of payment cases under 26 U.S.C. § 7201 and willful failure to pay cases under 26 U.S.C. § 7203. Although the definition of tax loss corresponds to what is commonly called the "criminal figures," its amount is to be determined by the same rules applicable in determining any other sentencing factor. In some instances, such as when indirect methods of proof are used, the amount of the tax loss may be uncertain; the guidelines contemplate that the court will simply make a reasonable estimate based on the available facts.

Notes under subsections (c)(1) and (c)(2) address certain situations in income tax cases in which the tax loss may not be reasonably ascertainable. In these situations, the "presumptions" set forth are to be used unless the government or defense provides sufficient information for a more accurate assessment of the tax loss. In cases involving other types of taxes, the presumptions in the notes under subsections (c)(1) and (c)(2) do not apply.

Example 1: A defendant files a tax return reporting income of $40,000 when his income was actually $90,000. Under Note (A) to subsection (c)(1), the tax loss is treated as $14,000 ($90,000 of actual gross income minus $40,000 of reported gross income = $50,000 x 28%) unless sufficient information is available to make a more accurate assessment of the tax loss.

Example 2: A defendant files a tax return reporting income of $60,000 when his income was actually $130,000. In addition, the defendant claims $10,000 in false tax credits. Under Note (A) to subsection (c)(1), the tax loss is treated as $29,600 ($130,000 of actual gross income minus $60,000 of reported gross income = $70,000 x 28% = $19,600, plus $10,000 of false tax credits) unless sufficient information is available to make a more accurate assessment of the tax loss.

Example 3: A defendant fails to file a tax return for a year in which his salary was $24,000, and $2,600 in income tax was withheld by his employer. Under the note to subsection (c)(2), the tax loss is treated as $2,200 ($24,000 of gross income x 20% = $4,800, minus $2,600 of tax withheld) unless sufficient information is available to make a more accurate assessment of the tax loss.

In determining the tax loss attributable to the offense, the court should use as many methods set forth in subsection (c) and this commentary as are necessary given the circumstances of the particular case. If none of the methods of determining the tax loss set forth fit the circumstances of the particular case, the court should use any method of determining the tax loss that appears appropriate to reasonably calculate the loss that would have resulted had the offense been successfully completed.

2. In determining the total tax loss attributable to the offense (see § 1B1.3(a)(2)), all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated. The following examples are illustrative of conduct that is part of the same course of conduct or common scheme or plan: (a) there is a continuing pattern of violations of the tax laws by the defendant; (b) the defendant uses a consistent method to evade or camouflage income, e.g., backdating documents or using off-shore accounts; (c) the violations involve the same or a related series of transactions; (d) the violation in each instance involves a false or inflated claim of a similar deduction or credit; and (e) the violation in each instance involves a failure to report or an understatement of a specific source of income, e.g., interest from savings accounts or income from a particular business activity. These examples are not intended to be exhaustive.

3. "Criminal activity" means any conduct constituting a criminal offense under federal, state, local, or foreign law.

4. Sophisticated Means Enhancement. — For purposes of subsection (b)(2), "sophisticated means" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicates sophisticated means.

5. A "credit claimed against tax" is an item that reduces the amount of tax directly. In contrast, a "deduction" is an item that reduces the amount of taxable income.

6. "Gross income," for the purposes of this section, has the same meaning as it has in 26 U.S.C. § 61 and 26 C.F.R. § 1.61.

7. If the offense involved both individual and corporate tax returns, the tax loss is the aggregate tax loss from the individual tax offense and the corporate tax offense added together. Accordingly, in a case in which a defendant fails to report income derived from a corporation on both the defendant's individual tax return and the defendant's corporate tax return, the tax loss is the sum of (A) the unreported or diverted amount multiplied by (i) 28%; or (ii) the tax rate for the individual tax offense, if sufficient information is available to make a more accurate assessment of that tax rate; and (B) the unreported or diverted amount multiplied by (i) 34%; or (ii) the tax rate for the corporate tax offense, if sufficient information is available to make a more accurate assessment of that tax rate. For example, the defendant, the sole owner of a Subchapter C corporation, fraudulently understates the corporation's income in the amount of $100,000 on the corporation's tax return, diverts the funds to the defendant's own use, and does not report these funds on the defendant's individual tax return. For purposes of this example, assume the use of 34% with respect to the corporate tax loss and the use of 28% with respect to the individual tax loss. The tax loss attributable to the defendant's corporate tax return is $34,000 ($100,000 multiplied by 34%). The tax loss attributable to the defendant's individual tax return is $28,000 ($100,000 multiplied by 28%). The tax loss for the offenses are added together to equal $62,000 ($34,000 + $28,000).

Background: This guideline relies most heavily on the amount of loss that was the object of the offense. Tax offenses, in and of themselves, are serious offenses; however, a greater tax loss is obviously more harmful to the treasury and more serious than a smaller one with otherwise similar characteristics. Furthermore, as the potential benefit from the offense increases, the sanction necessary to deter also increases.

Under pre-guidelines practice, roughly half of all tax evaders were sentenced to probation without imprisonment, while the other half received sentences that required them to serve an average prison term of twelve months. This guideline is intended to reduce disparity in sentencing for tax offenses and to somewhat increase average sentence length. As a result, the number of purely probationary sentences will be reduced. The Commission believes that any additional costs of imprisonment that may be incurred as a result of the increase in the average term of imprisonment for tax offenses are inconsequential in relation to the potential increase in revenue. According to estimates current at the time this guideline was originally developed (1987), income taxes are underpaid by approximately $90 billion annually. Guideline sentences should result in small increases in the average length of imprisonment for most tax cases that involve less than $100,000 in tax loss. The increase is expected to be somewhat larger for cases involving more taxes.

Failure to report criminally derived income is included as a factor for deterrence purposes. Criminally derived income is generally difficult to establish, so that the tax loss in such cases will tend to be substantially understated. An enhancement for offenders who violate the tax laws as part of a pattern of criminal activity from which they derive a substantial portion of their income also serves to implement the mandate of 28 U.S.C. § 994(i)(2).

Although tax offenses always involve some planning, unusually sophisticated efforts to conceal the offense decrease the likelihood of detection and therefore warrant an additional sanction for deterrence purposes.

The guideline does not make a distinction for an employee who prepares fraudulent returns on behalf of his employer. The adjustments in Chapter Three, Part B (Role in the Offense) should be used to make appropriate distinctions.

Historical Note: Effective November 1, 1987. Amended effective November 1, 1989 (see Appendix C, amendments 219-223); November 1, 1990 (see Appendix C, amendment 343); November 1, 1992 (see Appendix C, amendment 468); November 1, 1993 (see Appendix C, amendment 491); November 1, 1998 (see Appendix C, amendment 577); November 1, 2001 (see Appendix C, amendment 617); November 1, 2002 (see Appendix C, amendment 646).

[Previous Document in Book]                              [Next Document in Book]

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved

U.S. Sentencing Commission Guidelines Manual    **EXHIBIT** *"E"*



🗀 U.S. Sentencing Commission Guidelines Manual
🗀 CHAPTER TWO — OFFENSE CONDUCT
🗀 PART T — OFFENSES INVOLVING TAXATION
🗀 4. TAX TABLE

[Previous Document in Book]                    [Next Document in Book]

§ *2T4.1.* Tax Table

| Tax Loss (Apply the Greatest) | Offense Level |
|---|---|
| (A) $2,000 or less | 6 |
| (B) More than $2,000 | 8 |
| (C) More than $5,000 | 10 |
| (D) More than $12,500 | 12 |
| (E) More than $30,000 | 14 |
| (F) More than $80,000 | 16 |
| (G) More than $200,000 | 18 |
| (H) More than $400,000 | 20 |
| (I) More than $1,000,000 | 22 |
| (J) More than $2,500,000 | 24 |
| (K) More than $7,000,000 | 26 |
| (L) More than $20,000,000 | 28 |
| (M) More than $50,000,000 | 30 |
| (N) More than $100,000,000 | 32 |
| (O) More than $200,000,000 | 34 |
| (P) More than $400,000,000 | 36. |

Historical Note: Effective November 1, 1987. Amended effective November 1, 1989 (see Appendix C, amendment 237); November 1, 1993 (see Appendix C, amendment 491); November 1, 2001 (see Appendix C, amendment 617); January 25, 2003 (see Appendix C, amendment 647); November 1, 2003 (see Appendix C, 653).

[Previous Document in Book]                    [Next Document in Book]

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved