SCANNED

DOCKETED

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN BISANTI,  )
  Petitioner  )
                        )  CIVIL NO. 04-30145-MAP
      v.  )
                        )
UNITED STATES OF AMERICA  )
  Respondent

GOVERNMENT'S OPPOSITION TO JOHN BISANTI'S MOTION FOR
POST-CONVICTION RELIEF PURSUANT TO 28 U.S.C. § 2255

The United States of America, by Michael J. Sullivan, United States Attorney for the District of Massachusetts, respectfully submits the following opposition to John Bisanti's ("Bisanti") Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255.

**Procedural Background**

On August 15, 2002, a federal grand jury in Springfield, Massachusetts returned a one-count indictment which charged John Bisanti, a/k/a "Giovanni Bisanti," a/k/a "Gianni Bisanti" with attempt to evade and defeat payment of taxes for the years 1994 through 1998, in violation of 26 U.S.C. § 7201.

Following a jury trial, Bisanti was found guilty and subsequently sentenced to a 41 term of imprisonment on February 4, 2004. Bisanti filed a timely notice of appeal on September 8, 2003. Bisanti's appeal is currently pending before the First Circuit Court of Appeals. Bisanti filed the instant motion on August 5, 2004.

## Summary of the Argument

Relying upon <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004), Bisanti contends that his sentence is illegal because it was imposed in violation of his Sixth Amendment right to have a jury find beyond a reasonable doubt any fact that is used to increase his sentence. Specifically, Bisanti attacks his sentence on the grounds that the Court sentenced him to a 41 term of imprisonment based on its finding that Bisanti evaded payment of more than $400,000 but less than $1,000,000 in taxes. Under the United States Sentencing Guidelines, the base offense level for evading payment of taxes without any tax loss is 6. The corresponding sentencing range is 0-6 months. See U.S.S.G. § 2T1.1. The offense level for having evaded payment of more than $400,000.00 but less than $1,000,000.00 is 20. See U.S.S.G. § 2T1.4. The corresponding sentencing range is 33-41 months. In addition, the Court found that Bisanti used sophisticated means which increased his offense level to 22 and resulted in a guideline range of 41-51 months. Bisanti was then sentenced to 41 months. Bisanti now claims that under <u>Blakely v. Washington</u>, his sentence cannot exceed 0-6 months.

As discussed in more detail below, Bisanti's petition is premature and should be denied without prejudice because his

direct appeal is still pending.[1]  Moreover, even if this Court were inclined to consider Bisanti's petition, he is not entitled to relief because ample evidence of the tax loss (amount of taxes due and owing to the IRS by Bisanti) was presented to the jury and alleged in the indictment.[2]  Finally, Blakely did not invalidate the guidelines.

## Argument

**I. The orderly administration of justice precludes a district court from considering a motion to vacate judgment of conviction pursuant to 28 U.S.C. § 2255 while review of the direct appeal is still pending**

The dispositive question before the Court is whether Bisanti's attempt to obtain relief under section 2255 based on

---

[1] Because Blakely was decided while Bisanti's case was pending on direct appeal, the ruling applies to his case as long as the issue was adequately preserved.  See Griffith v. Kentucky, 479 U.S. 314, 328 (1987).  A case is "final" when a "judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition of certiorari elapsed or a petition for certiorari finally denied." Id. at 321 n. 6.  Thus, Blakely is applicable to all cases "pending on direct review or not yet final" as of June 24, 2004.

[2] Furthermore, Bisanti may well have made admissions regarding the amount of taxes that he owed to the IRS during his testimony at trial.  Undersigned counsel for the government recalls that Bisanti did not contest the amount of taxes due and owing to the IRS.  Rather, he challenged the government's allegations that he evaded payment.  However, until the trial transcript is prepared, the government cannot pursue this argument.  The government has contacted the Court Reporter, Alice Moran, and learned that the transcript pertaining to Bisanti's trial testimony will be available in approximately thirty days.  Thus, at a minimum, before the Court considers the merits of Bisanti's motion, the government requests that it be granted leave to review the transcript and submit a supplemental response.

3

the principles enunciated in <u>Blakely v. Washington</u>, is premature. It is. The settled rule in the First Circuit, which Bisanti has ignored, is that the district court should decline to hear claims for relief under section 2255 until the direct appeal is decided, unless "extraordinary circumstances" are demonstrated. <u>United States v. Gordon</u>, 634 F.2d 638, 638-39 (1st Cir. 1980). <u>See also</u> <u>United States v. Diaz-Martinez</u>, 71 F.3d 946, 953 (1st Cir. 1995) (dismissing a section 2255 petition claiming ineffective assistance of counsel as premature until the prisoner's direct appeal concludes).

As set forth by the First Circuit in <u>United States v. Gordon</u>, there are sound reasons for precluding a district court from considering a 2255 petition while review of the direct appeal is still pending. For example, like the situation presented in <u>Gordon</u>, if the Court denies Bisanti's motion and Bisanti pursues an appeal, the Court of Appeals will be forced to entertain duplicative appeals that may warrant examination under different standards of review. Ironically, with respect to the applicable standard of review, Bisanti may fare better on direct appeal. Moreover, determination of Bisanti's direct appeal may render collateral attack unnecessary.

Another important consideration for Bisanti is that under the gate keeping requirements of the Antiterrorism and Effective Death Penalty Act of 1996, he must receive approval from the

4

Court of Appeals to proceed with a second or successive petition. 28 U.S.C. § 2244(b)(3)(A). In general, any unpursued errors arising out of events that occurred before the filing of an initial motion to vacate a sentence under section 2255, and which could have been, but were not, challenged in that motion, are not eligible for inclusion in a subsequent section 2255 motion. United States v. Pratt, 129 F.3d 54, 60 (1st Cir. 1997) (denying petitioner's request for leave to file a second or successive petition alleging ineffective assistance of counsel denied where petition had incentive and ability to raise the claim in his first motion.) Indeed, the First Circuit has already begun to deny applications for leave to file successive 2255 petitions based on Blakely. See Campbell v. United States, No. 02-2387, (August 25, 2004), unpublished per curiam opinion wherein the First Circuit denies a certificate of appealability on ineffective assistance of counsel claims (including the failure to raise Blakely) in a § 2255 petition. See also, In Re Dean, 2004 WL 1534788 (11th Cir. July 9, 2004)(denying leave to file second or successive habeas motion based on Blakely); see generally Tyler v. Cain, 533 U.S. 656, 663 (2001)("a new rule is not made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive"); Sustache-Rivera v. United States, 221 F.3d 8, 15 (1st Cir.)(same), cert. denied, 532 U.S. 924 (2001). "If the Supreme Court eventually makes the

[Blakely] rule retroactive, [Porter] may at that time attempt a claim by second or successive § 2255 petition." <u>Sustache-Rivera</u>, 221 F.3d at 16-17 (footnote omitted).

Furthermore, there is nothing "extraordinary" about Bisanti's situation. He is not without recourse. On the contrary, he has filed a timely notice of appeal and will presumably raise his <u>Blakely</u> claim before the Court of Appeals. Indeed, his failure to pursue his claim on direct appeal before filing a 2255 petition constitutes an automatic "procedural default," requiring him to show "cause and prejudice" before his petition can move forward. <u>Suveges v. United States</u>, 7 F.3d 6 (1st Cir. 1993). (Failure to object to an enhanced term of supervised release at sentencing and failure to appeal the sentence in the first instance constitutes "a procedural default," requiring a § 2255 movant to show "cause and prejudice.") Issues not raised on direct appeal cannot be considered in the context of a section 2255 motion, unless the petitioner demonstrates "cause" excusing his failure to raise the issue previously and "actual prejudice" resulting from the claimed error. <u>United States v. Frady</u>, 465 U.S. 152, 167-168 (1982). Based on the procedural posture of this case, Bisanti cannot meet the "cause and actual prejudice" standard for obtaining relief under § 2255. Accordingly, his motion should be denied.

II.  **Blakely does not affect Bisanti's sentence**

In Blakely v. Washington, the Court ruled that the Washington State courts could not constitutionally rely on judicial findings to impose a sentence above the "standard range" set forth in the statute. The Court stated that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." Id. At the present time, it is questionable whether it could be said that the Supreme Court recognized a right not to be sentenced in accordance with the Sentencing Guidelines when the sentence falls within the statutory maximums. Nonetheless, the Court's holding in Blakely does not prevent the court from applying the Sentencing Guidelines in this case.

First, this case differs from Blakely in two important respects. Blakely involved a conviction based on a guilty plea in which the defendant did not admit sufficient facts to support the sentence imposed by the court. Here, Bisanti was convicted by a jury of evasion of payment of taxes "in an amount of approximately $518,506.00." The indictment states, in pertinent part, " Beginning on or about April 15, 1994 and continuing up to and including the date of this Indictment, in the District of Massachusetts and elsewhere, defendant **JOHN BISANTI** did willfully

attempt to evade and defeat the payment of a large part of the income tax due and owing by him to the United States for the calendar years 1994 through 1998, in an amount of approximately $518,506.00, exclusive of interest and penalties, by failing to pay his federal income tax liabilities for the years 1994 through 1998,..." Because the indictment charged the tax loss and the jury convicted the defendant of the charge, any Blakely requirement that sentencing factors be proved to the jury was satisfied.[3]

Second, unlike Blakely, the statute under which Bisanti was charged provided notice of the statutory maximum he faced upon conviction. By contrast, Blakely involved a legislative scheme which created two distinct statutory maximums: one very broadly classified (and provided broad maximum ranges for) offenses as A, B, or C felonies, and the other provided crime-by-crime guidelines ranges, from which a judge could depart upward based on his or her own findings of aggravating factors.

The Sixth Amendment right to trial by jury is fully protected when there must be a jury finding beyond a reasonable doubt on the facts that establish the legislatively prescribed maximum punishment to which a defendant is exposed. The criminal

---

[3] For the purpose of this section of the argument, the government is assuming that Blakely applies to the Sentencing Guidelines. However, the government contends, as set forth in subsequent sections, that Blakely does not apply to the federal Sentencing Guidelines.

statute provides notice of the ultimate consequences should an individual refuse to follow the rules. As Justice Scalia said in Apprendi v. New Jersey:

> I think it not unfair to tell a prospective felon that if he commits his contemplated crime he is exposing himself to a jail sentence of 30 years - - and that if, upon conviction, he gets anything less than that he may thank the mercy of a tenderhearted judge. . . Will there be disparities? Of course. But the criminal will never get _more_ punishment than he bargained for when he did the crime, and his guilt of the crime (and hence the length of the sentence to which he is exposed) will be determined beyond a reasonable doubt by the unanimous vote of 12 of his fellow citizens.

530 U.S. at 498 (Scalia, J., concurring) (emphasis in original).

Here, the defendant was charged with and convicted of evasion of payment of taxes which carries a five-year maximum sentence. Thus, any sentence which falls within a five-year maximum does not violate Blakely.[4]

### III. **This Court may not sua sponte invalidate the federal Sentencing Guidelines under Blakely**

    A.   This Court is Bound by Supreme Court and Circuit Court Precedent Upholding the Guidelines

---

[4] The tax table set forth under §2T1.4 of the Sentencing Guidelines is nothing more than a series of graduated, minimum sentences corresponding to the amount of loss. As long as the amount of loss does not exceed the five-year statutory maximum, there is no Blakely violation. Blakely, 124 S.Ct. at 2538 (rule does not apply to cases involving "sentencing scheme(s) that imposed a statutory minimum if a judge found a particular fact.")

9

Blakely did not invalidate the federal Sentencing Guidelines or hold that its rule applies to the Guidelines. Id. at 2538 n. 9. Indeed, it expressly refrained from such a holding, stating "[t]he Federal Guidelines are not before us, and we express no opinion on them." Id.; see also Apprendi, 530 U.S. at 497 n.21 (Court expressed no view on the Guidelines beyond "what this Court has already held.)" To be sure, the decision has created substantial confusion regarding the Guidelines; however, in the meantime, this court should adhere to Supreme Court and First Circuit precedent.[5] Thus far, the Supreme Court has consistently upheld the Guidelines against constitutional attack and underscored their unique status within our constitutional scheme. See, e.g., Mistretta v. United States, 488 U.S. 361 (1989). Indeed, the Court has found that so long as a sentence does not exceed the statutory maximums established by Congress for the offense of conviction, a Guidelines sentence can (in fact, sometimes must) be based on judge-found conduct not proved to a jury. See Edwards v. United States, 523 U.S. 511, 514-15 (1998)(conduct not charged in the indictment); Witte v. United

---

[5] A definitive answer is expected soon. On August 2, 2004, the Supreme Court granted certiorari in United States v. Booker, No. 04-104, and United States v. Fanfan, No. 04-105, and will to decide whether imposing an enhanced sentence under the Sentencing Guidelines based on the sentencing judge's determination of a fact violates Sixth Amendment, and if so, whether that renders the Sentencing Guidelines as a whole inapplicable. Argument is scheduled for October 4, 2004.

10

States, 515 U.S. 389, 399-401 (1995) (same); United States v. Watts, 519 U.S. 148, 156-57 (1997) (per curiam)(conduct of which a defendant is acquitted but is established by a preponderance of the evidence). Moreover, the Court has held explicitly that courts are bound not only by the Guidelines, but by their policy statements and commentary as well. Stinson v. United States, 508 U.S. 36, 42 (1993).

This court is required to follow these precedents. See State Oil Co. v. Khan, 522 U.S. 3, 20 (1997) ("it is [the Supreme Court's] prerogative alone to overrule one of its precedents"); Agostini v. Felton, 521 U.S. 203, 237 (1997) (courts of appeals must leave to "this Court the prerogative of overruling its own decisions," even if such a decision "appears to rest on reasons rejected in some other line of decisions") (quotations, citations omitted). Indeed, the First Circuit has acknowledged the obligation to follow Supreme Court precedent even when that precedent may appear to be undermined by subsequent Supreme Court decisions. Figueroa v. Rivera, 147 F.3d 77, 81 (1st Cir. 1998) (noting that the Supreme Court has "admonished the lower federal courts to follow its directly applicable precedent, even if that precedent appears weakened by pronouncements in its subsequent decisions").

Before Blakely, the federal Courts of Appeals unanimously held that the federal Guidelines do not violate the rule of

11

Apprendi.[6] After Blakely, the majority of appeals courts have agreed that the Sentencing Guidelines should be followed unless and until the Supreme Court rules otherwise. See e.g., United States v. Reese, __ F.3d __, 2004 WL 1946076 (11th Cir. Sept. 2, 2004) ("district courts should continue to sentence pursuant to the Guidelines until such time as the Supreme Court rules on this issue); United States v. Koch, __ F.3d __, 2004 WL 1899930 (6th Cir. Aug. 26, 2004) (same); United States v. Mincey, __ F.3d __ 2004 WL 1794717 (2d. Cir. Aug. 12, 2004) (same); United States v. Pineiro, 377 F.3d 464 (5th Cir. 2004) (same); United States v. Hammoud, 378 F.3d 426 (4th Cir. 2004) (same). But see United States v. Ameline, 376 F.3d 967 (9th Cir. 2004) (judicial fact finding unconstitutional under Blakely); United States v. Booker, 375 F.3d 508 (7th Cir. 2004) (same).

    B.    The Supreme Court Has Consistently Upheld the Constitutionality of Guidelines Sentences Based on <u>Judge-Found Facts</u>.

---

[6] See, e.g., United States v. Casas, 356 F.3d 104, 128 (1st Cir. 2004); United States v. Luciano, 311 F.3d 146, 153 (2d Cir. 2002); United States v. Parmelee, 319 F.3d 583, 592 (3d Cir. 2003); United States v. Cannady, 283 F.3d 641, 649 & n.7 (4th Cir. 2002); United States v. Floyd, 343 F.3d 363, 372 (5th Cir. 2003); United States v. Tarwater, 308 F.3d 494, 517 (6th Cir. 2002); United States v. Merritt, 361 F.3d 1005, 1015 (7th Cir. 2004); United States v. Banks, 340 F.3d 683, 684-65 (8th Cir. 2003); United States v. Ochao, 311 F.3d 1133, 1134-36 (9th Cir. 2002); United States v. Mendez-Zamora, 296 F.3d 1013, 1020 (10th Cir. 2002); United States v. Ortiz, 318 F.3d 1030, 1039 (11th Cir. 2003); United States v. Pettigrew, 346 F.3d 1139, 1147 n. 18 (D.C. Cir. 2003).

The Sentencing Reform Act of 1984 significantly altered the way in which district courts sentence persons convicted of federal crimes. Before the Act, Congress defined broad sentencing ranges, and then left it to individual judges to set sentences within those ranges on a case-by-case basis. In 1984, the Sentencing Commission created a system requiring a court to consider a defendant's "real" offense (i.e., his actual conduct), even if that conduct is not part of the charged offense of conviction. See Guidelines Manual Ch. 1, Pt. A, intro. comment. 4(a) (2002) (now included as an editorial note following Guidelines § 1A1.1). The Commission also specified that such guidelines determinations were to be made within the statutory maximums established by Congress in the U.S. Code. See Guidelines § 5G1.1; see also Witte, 515 U.S. at 401-02 (noting that Guidelines channel the discretion of sentencing courts to take into account related uncharged misconduct in imposing sentence up to the statutory maximums, in a manner comparable to pre-Guidelines practice).

The Supreme Court repeatedly has upheld Guidelines sentences based on judge-found facts neither submitted to nor considered by a jury. Indeed, in Watts, 519 U.S. at 153-54, the Court upheld an enhancement, under Guidelines § 2D1.1(b)(1), for possession of a gun in connection with a drug offense, even though the jury had acquitted the defendant of the firearms charge under 18 U.S.C.

924(c). The Court noted that Guidelines § 1B1.3 "directs sentencing courts to consider all other related conduct, whether or not it resulted in a conviction." 519 U.S. at 153-54; see also Guidelines § 1B1.3, comment ("conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range").

Applying that principle, the Court held that the sentencing court could consider the defendant's acquitted conduct (the firearms use) in determining his Guidelines sentencing range (for drug trafficking) so long as the acquitted conduct was proved by a preponderance of the evidence. 519 U.S. at 156-57; see id. at 154 ("sentencing enhancements do not punish a defendant for crimes of which he was not convicted, but rather increase his sentence because of the manner in which he committed the crime of conviction").

Other cases have upheld Guidelines sentences based on related criminal conduct proved to a judge at sentencing, and not underlying a jury's verdict of guilt. See Witte, 515 U.S. at 399-400 (judge may impose higher Guidelines sentence on defendant convicted of possessing marijuana based on judge's finding that offender also engaged in uncharged cocaine conspiracy); Edwards, 523 U.S. at 514-15 (even if jury convicted defendant of cocaine-only conspiracy, judge may impose higher Guidelines sentence

14

based on finding that defendant's conduct included crack-related activities); United States v. Dunnigan, 507 U.S. 87, 95-96 (1993) (court may impose Guidelines enhancement for perjury at trial when sentencing defendant for offense of conviction).

In so ruling, the Court expressed its view of Guidelines enhancements not as "statutory maximums" (requiring proof to a jury beyond a reasonable doubt), but as rules channeling the discretion of judges within the congressionally set maximums in the U.S. Code. Indeed, the Court explicitly said as much in Edwards, which it notably cited with approval in Apprendi:

> Of course, petitioners' statutory and constitutional claims [that the court must base its Guidelines sentence exclusively on the cocaine-only facts found by the jury] would make a difference if it were possible to argue, say, that the sentences imposed exceeded the maximum that the statutes permit for a cocaine-only conspiracy. That is because a maximum sentence set by statute trumps a higher sentence set forth in the Guidelines.

Edwards, 523 U.S. at 515. To upset that understanding now -- and either invalidate the Guidelines altogether, or hold that every of the myriad upward adjustments, enhancements and departures in the Guidelines must be proved to a jury beyond a reasonable doubt -- would wreak havoc on the federal criminal justice system.

**IV. If the Court holds that <u>Blakely</u> precludes application of the Guidelines, the sentence should be imposed within the statutory range with due regard to the sentences prescribed by the Guidelines for similar offenses and offenders**

    A.    Guidelines Enhancements And The Procedures For Applying Them Are Not Severable From The Guidelines As A Whole

15

If <u>Blakely</u> applies to the Guidelines in this case, the Guidelines as a whole would be invalidated as a binding set of rules governing sentences and the court should exercise its discretion to impose a sentence within the range established by the offense of conviction. A patchwork approach, where the court applies the Guidelines but without the enhancements contemplated the scheme, would result in absurd results, clearly not contemplated by Congress.

For example, the base offense level in a tax case, like the instant case, is 6. The corresponding sentencing range is 0-6 months' imprisonment. The enhancements for the amount of tax loss under Section 2T1.4, however, provide for incremental increases in the sentencing range. Generally, enhancements would not ordinarily have been charged in the indictment or found by the jury, and they accordingly would be unavailable at sentencing if the Guidelines were applied with the <u>Blakely</u> overlay requiring a jury verdict on enhancing factors. Accordingly, most defendants who commit tax evasion, even in egregious cases, would likely receive sentences consisting of little or no jail time if the Guidelines could be applied with <u>Blakely</u>-type procedures for enhancing factors. See also <u>United States</u> v. <u>Shamblin</u>, Cr. No. 2:03-00217, 2004 WL 1468561, at * 10 (S.D.W.Va. June 30, 2004) (reduction in drug case from 240 months' imprisonment to "almost certainly inadequate" 12-month sentence under <u>Blakely</u>).

The example described above demonstrates that the Guidelines would not "function in a manner consistent with the intent of Congress" if a court attempted to apply them with the Blakely overlay. Alaska Airlines, 480 U.S. at 685. Accordingly, if Blakely applies to the Guidelines in a given case, the provisions of the current sentencing system that would be unconstitutional are not severable from the remainder of the Guidelines. See Minnesota v. Mille Lacs Band of Chippewa Indians, 526 U.S. 172, 191 (1999) ("The inquiry into whether a statute is severable is essentially an inquiry into legislative intent."). Therefore, the entire statute must be eliminated, and the basic policy choices in designing a new, constitutional scheme left up to Congress. The court has no authority to "rewrite [the] statute and give it an effect altogether different" from what Congress enacted. Railroad Retirement Bd. v. Alton R. Co., 295 U.S. 330, 362 (1935).

When Congress enacted the Sentencing Reform Act, Congress had in mind a system based on determinations by courts, not juries, of facts necessary for sentencing. The Commission structured the Guidelines for use in such a system. Eliminating the parts of the Guidelines scheme that would be unconstitutional if Blakely applies to the Guidelines would leave a remainder that is not severable -- i.e., that could not operate in the manner that Congress intended. For that reason, in any case in which

17

Blakely-type procedures would have to be applied to determining facts necessary for Guidelines enhancements, the Guidelines as a whole would no longer be applicable as binding authority.

The goal of the Guidelines was to "establish sentencing policies and practices . . . that . . . provide certainty and fairness in meeting the purposes of sentencing avoiding unwarranted sentencing disparities." 28 U.S.C. 991(b). The Guidelines were designed to result in sentences that "reflect . . . advancement in knowledge of human behavior as it relates to the criminal justice process." Id. Patchwork application of the Guidelines would frustrate such Congressional intent.

Therefore, if the court determines that the Guidelines could not constitutionally be applied in this case, the court should sentence the defendant between the minimum and maximum sentences prescribed by statute, and it may find whatever facts it believes necessary to impose a sentence within that range. The court should, however, look to the Guidelines for guidance.

Under 18 U.S.C. 3553(b),

> [i]n the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall . . . have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the policy statements of the Sentencing Commission.

    B.    If the Court Finds the Guidelines Severable, It Should Empanel a Sentencing Jury

If the court determines that the Sentencing Guidelines are severable, it should empanel a sentencing jury to find sentencing enhancements beyond a reasonable doubt. A sentencing jury would permit the court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth, in 18 U.S.C. § 3553(b)(2). At least one other court has adopted the sentencing jury approach in the wake of <u>Blakely</u>. <u>United States v. Landgartern</u>, 2004 WL 1576516 (E.D.N.Y. 2004).

### CONCLUSION

For the reasons stated above, Bisanti's motion pursuant to 28 U.S.C. § 2255 should be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ Ariane D. Vuono
Ariane D. Vuono
Assistant U.S. Attorney

Dated: September 14, 2004

CERTIFICATE OF SERVICE

Hampden,  ss.                            Springfield, Massachusetts
                                         September 14, 2004

    I, Ariane D. Vuono, Assistant U.S. Attorney, do hereby certify that I have served a copy of the foregoing by mail on Raipher Pellegrino, Esq., 95 State Street, Springfield, MA 01103.

                                                     /s/ Ariane D. Vuono
                                                   Ariane D. Vuono
                                                   Assistant U.S. Attorney